**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS EASTERN**
**DIVISION**

| | | |
|---|---|---|
| THADDEUS BEAULIEU, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 20-cv-2117 |
| v. | ) | |
| | ) | Judge Robert M. Dow, Jr. |
| ASHFORD UNIVERSITY, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Thaddeus Beaulieu, unhappy with the way instructors and administrators at Ashford University treated him and handled his complaints, sued the University and certain individual employees, plus a program administered by the Department of Veterans Affairs (and individual employees there), as well as U.S. Representative Bill Foster. Plaintiff seeks hundreds of millions of dollars in damages. Defendants have moved to dismiss the complaint for a variety of reasons.

For the reasons stated below, Defendants' motions [5, 18, and 22] are granted, and Plaintiff's complaint is dismissed without prejudice. Plaintiff's motion to amend [28] is denied, as the proposed amended complaint [29] fails to correct the deficiencies in the original complaint. Plaintiff may file a new motion to amend with a new proposed amended complaint—*if* he can do so consistent with the reasoning and instructions in this order—by April 26, 2021. If no motion for leave to amend is filed by that deadline, the Court will dismiss all claims with prejudice and enter a final judgment. If a motion for leave to amend is filed, then Defendants may file a response to the motion no later than May 10, 2021.

I.      **Background**[1]

The complaint is light on facts and heavy on conclusions, but the Court summarizes the narrative to the best of its understanding. Plaintiff Thaddeus Beaulieu was enrolled as a student and taking online classes at Ashford University from July 2018 until July 2019.  In connection with his schooling, Plaintiff was also involved with the "Chicago Vocational Rehab Office" or, more precisely, the Vocational Rehabilitation & Employment Division of the Chicago Regional Office of the United States Department of Veterans Affairs ("VA").  Plaintiff's exact involvement with the VA program, and its relationship with Ashford University, is not clear from the complaint.

Plaintiff, who is "partially of African American descent" and describes himself as a Christian, ran into problems with one or more of his instructors. [1-1 at 5.]  He alleges that Ashford University instructors gave him lower grades because he refused "to accept [Ashford University's] anti-Christian opinions on morality [such as the practice of Islam, incest, and homosexuality)." [*Id*.]  An instructor also told Plaintiff not to mention Jesus Christ or God during class, apparently because other students found Plaintiff's remarks to be offensive.  The instructor also allowed a Caucasian student to discuss "'black' males liking gay porn," which Plaintiff found to be offensive.  Other students were allowed to mention Jesus, Buddha, and Islam in class without reprimand.

Plaintiff's complaints about they way instructors had treated him somehow made their way to Justin Harrison, Ashford University's dean.  Plaintiff alleged that his quizzes contained errors,

---

[1] For purposes of the motion to dismiss, the Court accepts as true all of Plaintiff's well-pleaded factual allegations and draws all reasonable inferences in Plaintiff's favor. *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007); *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 554 (7th Cir. 1999).

and his instructors had admitted so, but Dean Harrison denied it. Relatedly (the Court assumes), Plaintiff claims that Ashford University staff "wrongfully accused" Plaintiff (of what, he does not say) to Dean Harrison, and that Dean Harrison slandered Plaintiff in emails (omitting to whom the emails were sent and what defamatory statements they contained).

Plaintiff then says that Ashford University made false allegations about him to the Chicago Vocational Rehab Office, causing the VA to suspend him from the vocational rehab program. Individual defendants at the VA, for whom the United States has been substituted as a defendant, [see 20], then failed to review all of the evidence, never spoke with Plaintiff about his side of the story, and reached a biased decision against him. The VA also declined to change the person handling Plaintiff's case or to transfer it to another office, despite his requests. At some point, the VA suspended Plaintiff from the vocational rehab program.

At one point, the VA[2] had told Plaintiff that he could continue his online education while he was out of the country to see his family. After his suspension, the VA said that it was against its policy to allow any student to complete online schooling in another country out of an office in the United States, and Plaintiff would have to continue his education in a "brick and mortar" school.

Additionally, a "school admittance counselor"—it is not clear whether this person worked for the VA or Ashford University or somewhere else—led Plaintiff to believe that he would be awarded full-time vocational rehab benefits (over $900/month) because he would be a full-time student at Ashford University. However, upon beginning school, Plaintiff received only partial

---

[2] The complaint does not state who told Plaintiff what, so it is not entirely clear that someone at the VA made these statements, but this is the Court's best understanding of Count 9.

benefits (roughly $600/month), and no one ever told him that he would not receive full-time student pay.

Finally, Plaintiff alleges that U.S. Representative Bill Foster failed to take prompt action and to conduct a thorough investigation into the matter within a reasonable timeframe.

On February 8, 2020, Plaintiff filed a suit in Kane County Circuit Court against Ashford University, Dean Justin Harrison in his individual capacity, Congressman Bill Foster, the (Veterans Administration) Chicago Vocational Rehab Office, and several individual employees of the VA (Herbert Morris, Irvine Pasquier, Stephanie L. Sleister, and Pete Hardy). On April 3, 2020, the case was removed to this Court. [See 1.] On June 22, 2020, the United States was substituted as the defendant in place of Bill Foster, Herbert Morris, Irvine Pasquier, Stephanie L. Sleister, and Pete Hardy pursuant to 28 U.S.C. § 2679(d)(1). [See 20.] The complaint now before the Court [1-1] contains 11 counts:

> Count 1: Slander
> Count 2: Conspiracy and harassment Count
> 3: Racial discrimination
> Count 4: Religious Discrimination
> Count 5: Misrepresentation (Intentional Tort)
> Count 6: Negligence I
> Count 7: Negligence II
> Count 7[sic]: Negligence III
> Count 8: Conspiracy
> Count 9: Conspiracy and Misrepresentation
> Count 10: Misrepresentation (Intentional Tort)

Defendants moved to dismiss on various jurisdictional and substantive grounds. [See 5, 18, 22.] Plaintiff responded but also moved to file an amended complaint. [28, 29], which Ashford University and Dean Harrison opposed [32].

4

## II.      Legal Standards

Defendants' Rule 12(b)(1) motions [5, 22] challenge Plaintiff's standing to bring this lawsuit. Federal Rule of Civil Procedure ("Rule") 12(b)(1) "provides for dismissal of a claim based on lack of subject matter jurisdiction, including lack of standing." *Stubenfield v. Chicago Housing Authority*, 6 F.Supp.3d 779, 782 (N.D. Ill. 2013) (citing *Retired Chicago Police Ass'n v. City of Chicago*, 76 F.3d 856 (7th Cir. 1996)).  Typically, "[i]n ruling on a motion to dismiss for want of standing, the district court must accept as true all material allegations of the complaint, drawing all reasonable inferences therefrom in the plaintiff's favor." *Lee v. City of Chicago*, 330 F.3d 456, 468 (7th Cir. 2003) (citing *Retired Chicago Police Ass'n,* 76 F.3d at 862); see also *Moore v. Wells Fargo Bank, N.A.*, 908 F.3d 1050, 1057 (7th Cir. 2018); *Browner v. American Eagle Bank*, 355 F.Supp.3d 731, 732–33 (N.D. Ill. 2019).  However, when "standing is challenged as a factual matter, the plaintiff must come forward with 'competent proof'—that is a showing by a preponderance of the evidence—that standing exists." *Lee*, 330 F.3d at 468; see also *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 445 (7th Cir. 2009) (once evidence calling the plaintiff's standing into question is proffered, the presumption of correctness accorded to a complaint's allegations falls away, and the plaintiff bears the burden of coming forward with competent proof that standing exists).

Dean Harrison's motion to dismiss also argues that the Court lacks personal jurisdiction over him, an inquiry that is governed by Rule 12(b)(2). [19 at 11.]  A motion to dismiss under Rule 12(b)(2) challenges whether the Court has jurisdiction over a defendant. The party asserting jurisdiction has the burden of proof. See *Tamburo v. Dworkin*, 601 F.3d 693, 701 (7th Cir. 2010).  The Court may consider affidavits and other competent evidence submitted by the parties. *Purdue Rsch. Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003)  If the Court rules on

5

the motion without a hearing, the plaintiff need only establish a *prima facie* case of personal jurisdiction. *GCIU-Emp'r Ret. Fund v. Goldfarb Corp.*, 565 F.3d 1018, 1023 (7th Cir. 2009). The Court will "read the complaint liberally, in its entirety, and with every inference drawn in favor of" the plaintiff. *Cent. States, Se. & Sw. Areas Pension Fund v. Phencorp Reinsurance Co.*, 440 F.3d 870, 878 (7th Cir. 2006) (quoting *Textor v. Bd. of Regents of N. Ill. Univ.*, 711 F.2d 1387, 1393 (7th Cir. 1983)). "[O]nce the defendant has submitted affidavits or other evidence in opposition to the exercise of jurisdiction," however, "the plaintiff must go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction." *Purdue*, 338 F.3d at 783. Any dispute concerning relevant facts is resolved in the plaintiff's favor. *Id.* at 782–83.

Defendants' Rule 12(b)(6) motions [5, 19, 22] challenge the sufficiency of the complaint. To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, the complaint first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), such that the defendant is given "fair notice of what the * * * claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)) (alteration in original). Second, the factual allegations in the complaint must be sufficient to raise the possibility of relief above the "speculative level." *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555).

Dismissal for failure to state a claim under Rule 12(b)(6) is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly,* 550 U.S.

at 558. In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court accepts as true all of Plaintiff's well-pleaded factual allegations and draws all reasonable inferences in Plaintiffs' favor. *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007). However, "[t]o survive a motion to dismiss, the well-pleaded facts of the complaint must allow the court to infer more than the mere possibility of misconduct." *Langworthy v. Honeywell Life & Acc. Ins. Plan*, 2009 WL 3464131, at \*2 (N.D. Ill. Oct. 22, 2009) (citing *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011)). Additionally, the Court "need not accept as true legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678). Evaluating whether a "claim is sufficiently plausible to survive a motion to dismiss is 'a contextspecific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Id.* (quoting *McCauley*, 671 F.3d at 616).

## III.   Analysis A.   Preliminary Matters

The Court must first establish what facts and materials it may consider in deciding the pending motions. When deciding a motion under Rule 12(b)(6), the Court generally cannot consider matters outside the pleadings without converting the motion into one for summary judgment under Rule 56. Fed.R.Civ.P. 12(d); *Van Tassell v. United Mktg. Grp., LLC*, 795 F. Supp. 2d 770, 779 (N.D. Ill. 2011). There are a few exceptions, such as facts or documents that the Court may take judicial notice of, and district courts may also look beyond the jurisdictional allegations of a complaint and view evidence to determine whether subject matter jurisdiction exists. *Ciarpaglini v. Norwood*, 817 F.3d 541, 543 (7th Cir. 2016) (citing *Long v. Shorebank Development Corp.*, 182 F.3d 548, 554 (7th Cir. 1999)).

7

Plaintiff attached to his response seventeen exhibits [27-1 through 27-17], but the Court may not consider them. Upon brief review, they appear to be primarily emails and correspondence between Plaintiff and individuals at Ashford University, which do not bear on the Court's subject matter jurisdiction or fall within the categories of materials as to which the Court may take judicial notice. Similarly, Plaintiff's response alleges many facts not contained in the complaint, which the Court cannot consider either. A "[p]laintiff may not supplement or amend his complaint by presenting new facts or theories in his briefing in opposition to a motion to dismiss." *Duffy v. Ticketreserve, Inc.*, 722 F. Supp. 2d 977, 990 (N.D. Ill. 2010).

The United States attached to its motion to dismiss [22] two affidavits in support of its argument that Plaintiff has not exhausted his administrative remedies. The United States frames this as a subject matter jurisdiction issue: because Plaintiff did not exhaust his administrative remedies, the FTCA's waiver of sovereign immunity does not apply and—the government argues—the Court lacks subject matter jurisdiction. If correct, then the Court would be able to take those materials into account. However, as discussed below, the Seventh Circuit does not view federal sovereign immunity as a subject matter jurisdiction issue, so the Court is not persuaded that it can consider these affidavits at this stage.

**B.      Standing**

The Court begins with jurisdictional issues. Congressman Foster argues that the Court lacks subject matter jurisdiction first because Plaintiff lacks standing, and second because his claims against Congressman Foster are barred by sovereign immunity (which is addressed below). [See 5.] Standing is a threshold issue. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 569 (1992). Article III standing requires a plaintiff to have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial

decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (citing *Lujan*, 504 U.S. at 560-61). "[T]he party invoking federal jurisdiction[] bears the burden of establishing these elements." *Id*. at 1547. With respect to Congressman Foster, Plaintiff certainly has not established traceability. The complaint does not even suggest a connection between Congressman Foster and any of the alleged injuries to Plaintiff, which range from his grades to instructors treating him poorly in class to suspension from the vocational rehab program. There are no allegations that he directly caused any of Plaintiff's injuries, and the complaint does not explain how his alleged failure to investigate caused or even contributed to any of Plaintiff's alleged injuries. (In fact, the complaint does not even allege that Plaintiff asked Congressman Foster to investigate.) In short, nothing in the complaint is fairly traceable back to Congressman Foster. Accordingly, Plaintiff lacks standing to bring claims against him and the Court lacks subject matter jurisdiction over Plaintiff's claims against him. This alone warrants dismissal of Plaintiff's claims against Congressman Foster.[3]

### C.      Personal Jurisdiction

Dean Harrison argues that he has insufficient contacts with Illinois for this Court to have personal jurisdiction over him, and even if he did, any acts he committed in the state of Illinois were done on behalf of his employer, so the fiduciary shield doctrine applies to foreclose personal jurisdiction over him. [19 at 11-12.]

The Due Process Clause of the Fourteenth Amendment authorizes a court to exercise jurisdiction over a non-resident defendant only if the defendant has "certain minimum contacts with [the state] such that the maintenance of the suit does not offend 'traditional notions of fair

---

[3] Congressman Foster also argues that because sovereign immunity precludes money judgments against him, Plaintiff has not adequately alleged redressability. Defendants cite no authority for the proposition

play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting

*Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). In other words, "it is essential in each case that there

be some act by which the defendant purposefully avails itself of the privilege of conducting

activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson*

*v. Denckla*, 357 U.S. 235, 253 (1958). The requirement that a defendant have "minimum contacts"

with the forum ensures that a non-resident defendant will not be forced to litigate in a jurisdiction

as a result of "random, fortuitous, or attenuated contacts" with the forum or the unilateral activity

of the plaintiff; the defendant "should reasonably anticipate being haled into court" there. *Burger*

*King Corp. v. Rudzewicz*, 471 U.S. 462, 474-75 (1985).

"In the realm of personal jurisdiction, federal constitutional law draws a sharp and vital

---

that the doctrine of sovereign immunity entirely blocks redressability in these circumstances. Furthermore,
there are statutory waivers of sovereign immunity, and the parties have not briefed the effect of those those
waivers—which allow, under certain circumstances, recover against defendants like Congressman Foster—
on the argument that the doctrine of sovereign immunity prevents a plaintiff from showing redressability.
Fortunately, it is not necessary to untangle such questions at this time, because the Court resolves the
standing issue on the basis of Plaintiff's failure to show traceability.

distinction between two types of personal jurisdiction: specific or case-linked jurisdiction, and

general or all-purpose jurisdiction." *Abelesz v. OTP Bank*, 692 F.3d 638, 654 (7th Cir. 2012).

General (or "all-purpose") jurisdiction exists only "when the [party's] affiliations with the State in

which suit is brought are so constant and pervasive as to render it essentially at home in the forum

State." *Daimler AG v. Bauman*, 571 U.S. 117, 121 (2014) (quoting *Goodyear Dunlop Tires*

*Operations, S.A. v. Brown*, 564 U.S. 915, 923–24 (2011)) (internal quotation marks and alteration

omitted). Specific jurisdiction exists when the lawsuit "aris[es] out of or relate[s] to the

defendant's contacts with the forum." *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S.

408, 414 n.8 (1984). As the Seventh Circuit recently explained, the Supreme Court has "distilled

three "essential requirements" for the exercise of specific jurisdiction over an out-of-state defendant:

> First, the defendant's contacts with the forum state must show that it "purposefully availed [itself] of the privilege of conducting business in the forum state or purposefully directed [its] activities at the state." Second, the plaintiff's alleged injury must have arisen out of the defendant's forum-related activities. And finally, any exercise of personal jurisdiction must comport with traditional notions of fair play and substantial justice.

*Curry v. Revolution Laboratories, LLC*, 949 F.3d 385, 398 (7th Cir. 2020)) (quoting *Lexington Ins. Co. v. Hotai Ins. Co., Ltd.*, 938 F.3d 874, 878 (7th Cir. 2019) (alterations in original) (quoting *Felland v. Clifton*, 682 F.3d 665, 673 (7th Cir. 2012)).

The complaint fails to make even a *prima facie* case for personal jurisdiction over Dean Harrison. It alleges no facts suggesting that Dean Harrison has any affiliation with Illinois, much less one that is so constant and pervasive so as to make him "at home" in the state and subject him to general jurisdiction. Nor are there any allegations that Dean Harrison directed any activities at the state of Illinois or conducted any activities in Illinois that gave rise to Plaintiff's injuries such that specific jurisdiction could be established. The only connection between Dean Harrison and Illinois that the Court can draw from the complaint is that Dean Harrison was employed by an online university and one of its students, Plaintiff, was located in Illinois. That attenuated contact with Illinois should not have made Dean Harrison reasonably anticipate being haled into court in this state. In sum, the complaint fails to plead the minimum contacts required to establish that the Court has personal jurisdiction over Dean Harrison, and the claims against him (which the Court believes are found in Counts 1, 3, 5, and 8) therefore must be dismissed.[4]

---

[4] Because the Court resolves the personal jurisdiction question on these grounds, it need not address the Illinois fiduciary shield doctrine at this time.

11

### D.     Sovereign Immunity

Though Congressman Foster and the United States frame their argument that sovereign immunity requires dismissal under Rule 12(b)(1), the Seventh Circuit does not treat sovereign immunity as an issue of subject matter jurisdiction.[5]  "[W]hat sovereign immunity means is that relief against the United States depends on a statute; the question is not the competence of the court to render a binding judgment, but the propriety of interpreting a given statute to allow particular relief." *United States v. Cook County,* 167 F.3d 389 (7th Cir. 1999).  The statutory exceptions enumerated in 28 U.S.C. § 2680(a)-(n) to the United States's waiver of sovereign immunity (found in 28 U.S.C. § 1346(b)) limit the breadth of the Government's waiver of sovereign immunity, but they do not accomplish this task by withdrawing subject-matter jurisdiction from the federal

courts." *Parrott v. United States*, 536 F.3d 629, 634–35 (7th Cir. 2008) (citing *Frey v. EPA,* 270 F.3d 1129, 1132–33 (7th Cir. 2001) (differentiating between provisions that affect a federal court's competence to adjudicate cases under Article III, thereby limiting its subject-matter jurisdiction, from those that merely set limits on a plaintiff's ability to obtain relief)).  "It is the Government's burden to assert these exceptions if and when it seeks to defeat a claim because of them." *Id.* (finding that the court had jurisdiction to decide whether plaintiff was entitled to proceed with his claims against the United States).  Having set out the Seventh Circuit's view, the Court proceeds to Defendants' arguments.

---

[5] For a discussion of the Seventh Circuit's approach, see *Corpeno-Argueta v. United States*, 341 F. Supp. 3d 856, 861 (N.D. Ill. 2018).

12

Plaintiff attempts to bring multiple tort claims for money damages against the United States.[6] In general, the doctrine of sovereign immunity bars actions for money damages against the United States or its agencies. *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994); *United States v. Testan*, 424 U.S. 392, 399 (1976) (the United States may not be sued except by its consent, "and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit") (citation and quotation omitted). However, the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671–2680 allows actions against the government for money damages "arising out of torts committed by federal employees." *Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 217–218 (2008). The remedy provided by the FTCA is the "exclusive" basis for a common law tort claim against an officer or employee of the federal government "while acting within the scope of his office or employment." See 28 U.S.C. §§ 1346(b), 2679(b)(1); *Couch v. United States*, 694 F.3d 852, 856 (7th Cir. 2012).

The FTCA's waiver of sovereign immunity, however, is limited by its own procedural rules that act as a condition on the waiver. *United States v. Wong*, 135 S. Ct. 1625, 1636 (2015); *Warrum v. United States*, 427 F.3d 1048, 1049–50 (7th Cir. 2005). The first relevant limit is administrative exhaustion: no FTCA action may be initiated against the United States until the plaintiff has presented a claim to the appropriate federal agency and that agency has denied the claim or has failed to issue a final decision within six months of the date that the claim was presented. 28 U.S.C. § 2675(a); *McNeil v. United States*, 508 U.S. 106, 107 n1, (1993); *Kanar v. United States*, 118 F.3d

---

[6] The United States was substituted as the defendant in place of Bill Foster, Herbert Morris, Irvine Pasquier, Stephanie L. Sleister, and Pete Hardy pursuant to 28 U.S.C. § 2679(d)(1). [See 20.]

527, 528 (7th Cir. 1997) ("No one may file suit under the Federal Tort Claims Act without first making an administrative claim."). This requirement cannot be waived. *Best Bearings Co. v. United States*, 463 F.2d 1177, 1179 (7th Cir. 1972) (abrogated on other grounds by *Irwin v. Department of Veterans Affairs*, 498 U.S. 89 (1990)).

The complaint does not allege that Plaintiff filed any administrative claim regarding his grievances against the United States, and the United States has presented evidence that he did not file any administrative claim with the VA or the U.S. House of Representatives. [22 at 6-10.] It is not entirely clear whether the Court may consider this evidence. Although Defendants submitted evidence in support of an argument they frame as a subject matter jurisdiction issue-- suggesting that the Court could consider affidavits—the Seventh Circuit does not view the United States's sovereign immunity to be an issue of subject matter jurisdiction, as discussed above. But the Court need not resolve that question, because Plaintiff's own words settle the administrative exhaustion matter. Plaintiff told the Court that he intends to pursue administrative processes, effectively admitting that he has not exhausted those remedies. [27 at 1-2.] For this reason, Plaintiff may not, at this time, bring a suit under the FTCA and sovereign immunity bars his claims against the United States and Congressman Foster, so his claims against those defendants (Counts 2, 6, 7, 7[sic] against Congressman Foster, 9 and 10) are dismissed.

Two points additional points on the FTCA are worth addressing. First, Plaintiff's claims for intentional torts against the United States are not allowed and would be dismissed even if Plaintiff had exhausted his administrative remedies. The FTCA's waiver of sovereign immunity is subject to a number of exceptions, including the intentional tort exception, *Millbrook v. United States*, 569 U.S. 50, 52 (2013), which bars suits alleging certain intentional torts, including misrepresentation and deceit. 28 U.S.C. § 2680(h). Therefore, to the extent that Plaintiff alleges

14

claims for intentional torts against the United States in Counts 2, 9, and 10, they are dismissed. *Deloria v. Veterans Admin.*, 927 F.2d 1009, 1012–13 (7th Cir. 1991) (collecting cases and dismissing claim where plaintiff's allegations sounded in deliberate misrepresentation); *Omegbu v. United States*, 475 Fed.Appx. 628, 629 (7th Cir. 2012) (dismissing claim under the intentional tort exception where plaintiff alleged that officials "deliberately falsified information in his file"); *Cannon v. Forest Pres. Dist. of Cook Cnty.*, 2015 WL 921037, at *5 (N.D. Ill. Feb. 26, 2015) (holding that plaintiffs could not pursue FTCA claims arising "out of allegations of deceit or misrepresentation, regardless of how that claim is framed").

Second, even if Plaintiff's claims were exhausted, those against Congressman Foster would be barred by the discretionary function exception. Congress excepted from the FTCA's waiver of sovereign immunity "[a]ny claim ... based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a); *see Berkovitz v. United States,* 486 U.S. 531, 535 (1988). The discretionary function exception has two requirements: the conduct alleged must involve an element of judgment or choice, and the challenged discretionary conduct must amount to a permissible exercise of policy judgment. *Reynolds v. United States*, 549 F.3d 1108, 1112 (7th Cir. 2008). A congressman's decision whether to investigate a dispute over grades and classroom conduct between a private university and a student certainly involves an element of judgment or choice, and declining to invest time and resources into such an investigation is an allowable exercise of a congressman's policy judgment. Thus, the discretionary function exception bars Plaintiff's claims against Congressman Foster and Count 7[sic] against him must be dismissed.

### E.      Federal Discrimination Claims

Defendant Ashford University helpfully analyzes Count 3 (Racial Discrimination) and Count 4 (Religious Discrimination) under Title IV and Title VI of the Civil Rights Act of 1964. [19 at 5.]  First, there is no private right of action under Title IV, meaning that Plaintiff, as a private citizen, cannot pursue claims under Title IV. *Bedford v. Univ. of Louisville Sch. of Med.*, 887 F.2d 1086 (6th Cir. 1989) (affirming dismissal of claims under Title IV because it "does not create a separate cause of action"); *Carroll v. Millersville Univ. of PA*, No. CV 16-1406, 2020 WL 762509, at *11 (E.D. Pa. Feb. 14, 2020) ("Title IV does not provide a separate cause of action"); *Davis v. Hooper*, No. CIV. A. 07-632-GMS, 2008 WL 4220062, at *5 (D. Del. Sept. 15, 2008) (dismissing plaintiff's claims under Title IV because he had "no private cause of action for civil damages" under that statute).  To the extent that Counts 3 and 4 are brought under Title IV, they are dismissed.

Next, religious discrimination is not covered by Title VI. 42 U.S.C. § 2000d *et seq.*; *Brown v. William Rainey Harper Coll.*, 2017 WL 3278822, at *3 (N.D. Ill. Aug. 1, 2017); *LubavitchChabad of Ill., Inc. v. Nw. Univ.*, 6 F. Supp. 3d 806, 816 (N.D. Ill. 2013).  To the extent that Count 4 asserts a claim under Title VI, it is dismissed.

Racial discrimination, on the other hand, is a valid claim under Title VI.  To state a claim under Title VI, plaintiffs must allege: (1) that they have been intentionally discriminated against on the grounds of race; and (2) that defendants are recipients of federal financial assistance. *Khan v. Midwestern Univ.*, 147 F. Supp. 3d 718, 720 (N.D. Ill. 2015).  The complaint must also allege "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Adams*, 742 F.3d at 727 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009)). Threadbare allegations and conclusory statements are not sufficient to support a plausible cause of action. *Id*.

The complaint teeters on the edge of stating a claim, but at this point it is too conclusory. Plaintiff alleges no facts suggesting a causal connection between his race and the instructor's treatment—other than his own race, which alone is not enough—nor does he allege the race of any of the students he says were allowed to discuss religion. See *Khan* 147 F. Supp. 3d at 721 (plaintiff failed to state Title VI claim where she alleged only that she was "of Indian descent" and that defendant discriminated against her because she was of Indian descent, but not, for example, that students of another race were treated differently or anyone associated with the defendant made comments related to her race); *Jackson v. N. Illinois Univ. Coll. of L.*, 2010 WL 4928880, at *2 (N.D. Ill. Nov. 30, 2010) (allegations that plaintiff was black and that defendant school had a low percentage of black women and black students in its JD program were too conclusory to state a Title VI claim). He does state that a Caucasian student was allowed to discuss topics that he found offensive, such as gay porn, but Plaintiff does not state that he was prohibited from commenting on those same topics. Thus, the one other student whose race is alleged does not appear similarly situated to Plaintiff, and the Court cannot infer intentional discrimination against Plaintiff. The complaint therefore fails to state a claim for racial consideration under Title VI, and Count 3 must be dismissed.

F. **Administrative Exhaustion and Preemption**

Turning to the remaining arguments for dismissal, the first issue to confront is administrative exhaustion. Having discussed exhaustion at the federal level above, the Court now addresses administrative exhaustion in the context of certain state law claims. The relevant administrative scheme is the Illinois Human Rights Act, which vests the Illinois Human Rights

Commission with exclusive jurisdiction over allegations of civil rights violations brought under Illinois law. 775 Ill. Comp. Stat. 5/8-111(D) (2008) (stating that "no court of this state shall have jurisdiction over the subject of an alleged civil rights violation other than as set forth in this Act"); *Naeem v. McKesson Drug Co.*, 444 F.3d 593, 602 (7th Cir. 2006). That encompasses claims for racial discrimination, see, *e.g.*, *Paxson v. Cty. of Cook, Illinois*, 2002 WL 1968561, at *4 (N.D. Ill. Aug. 23, 2002) and religious discrimination, see, *e.g., Hussaini v. G4S Secure Sols. (USA) Inc.*, 379 F. Supp. 3d 679, 683 (N.D. Ill. 2019). The IHRA also preempts torts related to civil rights violations, see *Richards v. U.S. Steel*, 869 F.3d 557, 564 (7th Cir. 2017). To bring a claim in court under the IHRA, a plaintiff must first pursue and exhaust his administrative remedies. 775 ILCS §5/7A-102; 775 ILCS §5/8-111; *Baziar v. Moy*, 2016 WL 772861 at * 2 (N.D. Ill. 2016). Failing to comply with the exhaustion requirements results in dismissal of an IHRA claim. *Mayle v. Chicago Park District*, 2019 WL 2773681 at *5 (N.D. Ill. 2019).

To the extent that Count 2 (conspiracy and harassment), Count 3 (racial discrimination), and Count 4 (religious discrimination) pursue claims under state law, they are civil rights violations that are preempted by the IHRA. Plaintiff admits that he has not yet exhausted his administrative remedies [see 27 at 1-2 (saying that he "intends to use" administrative remedies and asking the Court to allow him to bring claims in the future if he later "concludes that the Administrative Remedies … did not fully and fairly compensate him.").] Therefore, Counts 2, 3, and 4 must be dismissed.

Ashford University argues that Count 1 (slander) is a related tort preempted by the IHRA, but it is too soon to say. To determine whether a tort related to a civil rights claim is preempted by the IHRA, the Court must ask whether the plaintiff states a valid common-law claim without needing to rely on the rights and duties created by the Illinois Human Rights Act. *Richards v. U.S.*

18

*Steel*, 869 F.3d 557, 564 (7th Cir. 2017) (citations omitted). The preemption test "rest[s] on an examination of legal duties, not on the factual" overlap between the claims. *Naeem*, 444 F.3d at 603 n.4. Plaintiff's slander allegations are so vague that the Court cannot tell at this stage whether he can state a claim independent of any duties created by the IHRA, so Ashford University's motion on these grounds is denied.

### G.    Count 1 (slander)

But the Court does grant Ashford's motion to dismiss the claim for slander (which the law recognizes as "defamation") for failure to state a claim. To state a claim for defamation under Illinois law, a plaintiff "must present facts showing that the defendant made a false statement about it, that the defendant made an unprivileged publication of that statement to a third party, and that this publication caused damage." *Maui Jim, Inc. v. SmartBuy Guru Enterprises*, 386 F. Supp. 3d 926, 940 (N.D. Ill. 2019). There are two types of defamation: defamation per se, and defamation per quod. Illinois recognizes the following five categories of statements as defamation per se: (1) words that impute the commission of a crime, (2) words that impute an infection with a loathsome communicable disease, (3) words that impute an inability to perform or lack of integrity in performing employment duties, (4) words that prejudice a party or impute a lack of ability in a person's profession, and (5) words that impute a person has engaged in adultery or fornication. *Solaia Technology, LLC v. Specialty Pub Co.*, 852 N.E.2d 825, 579–80 (Ill. 2006). In a defamation *per quod* action, damage to the plaintiff's reputation is not presumed and the plaintiff must plead and prove special damages. *Tuite v. Corbitt*, 866 N.E.2d 114, 121 (Ill. App. 2006).

The complaint contains little more than conclusory assertions that various defendants defamed Plaintiff. There is no description of the statements or explanation of their falsity, and the

Court cannot even tell if the claim should be construed as defamation per se or per quod. Either way, it the allegations in the complaint are insufficient. If per quod, however, the complaint also fails to allege special damages. Because the defamation claim is almost purely conclusory, it does not state a claim, and Count 1 must be dismissed.

### H.      Conspiracy Claims

Counts 2, 8, and 9 assert claims for conspiracy. *Buckner v. Atl. Plant Maint., Inc.* lays out the relevant framework for analyzing conspiracy claims under Illinois law:

> The mere characterization of a combination of acts as a conspiracy is insufficient to withstand a motion to dismiss. In order to state a claim for civil conspiracy, a plaintiff must plead a combination of two or more persons for the purpose of accomplishing by concerted action either an unlawful purpose or a lawful purpose by unlawful means. We first note that, because the acts of an agent are considered in law to be the acts of the principal, there can be no conspiracy between a principal and an agent.

694 N.E.2d 565, 571 (Ill. 1998) (citations omitted).

Each of Plaintiff's conspiracy claims must be dismissed. Count 2 fails to the extent that it asserts a conspiracy between agents (Dean Harrison and other Ashford staff) and their principal (Ashford University), because that is not permitted under Illinois law. *Id.* To the extent that it alleges a conspiracy between Ashford University and the VA, the Court reads the complaint to assert that they conspired to prevent Plaintiff from returning to school, but this is a bare conclusion—the complaint contains no facts describing any action taken by someone at Ashford, or the VA, or explaining that they acted together for an unlawful purpose or a to achieve a lawful purpose in an unlawful way. Count 8 is similarly lacking in factual allegations. For these reasons, both Count 2 and Count 8 must be dismissed.

The Court has difficulty following Count 9. In alleging conspiracy and misrepresentation, the count uses "defendant" and "Vocational Rehab office" separately, but it is not clear whether

Plaintiff is talking about Ashford University and the VA's vocational rehab program, or only the vocational rehab program. If the latter, the claim must be dismissed because it identifies only one wrongdoer, not the two or more required to state a conspiracy claim. See *id.* If the former, the claim still fails. Count 9 appears to describe contradictions between statements that someone at Ashford made and statements that someone at the vocational rehab program previously made, but it does not contain facts describing any action taken by someone at Ashford, or the VA, or suggesting that they acted together for an unlawful purpose or a to achieve a lawful purpose in an unlawful way. Count 9 must be dismissed as well.

## I. Negligence Claims

Congressman Foster also argues that Plaintiff fails to state a claim for negligence because the Congressman owed no duty to Plaintiff to investigate Plaintiff's problems with his school. "To state a cause of action for negligence, a plaintiff must demonstrate that the defendant owed a duty of care to the plaintiff, that the defendant breached the duty, and that an injury was proximately caused by the breach." *Prostran v. City of Chicago,* 811 N.E.2d 364, 367–68 (2004). "[W]hen considering a plaintiff's claim of negligence, it is axiomatic that a court must *first* determine that the defendant owed a legal duty to the plaintiff. Without such a determination, there can be no finding of liability, as 'a legal duty is a prerequisite to liability.'" *Suerth v. Exxon Mobil Corp.*, 2007 WL 2566265, at *2 (N.D. Ill. Aug. 29, 2007) (quoting *Belluomini v. Stratford Green Condo. Assoc.*, 346 Ill. App. 3d 687, 691 (2004)).

Nothing in the complaint suggests that Congressman Foster owed Plaintiff any duty regarding his dispute with Ashford University. The only basis for Plaintiff's claim is that Congressman Foster failed to investigate Plaintiff's case. Even assuming that Plaintiff requested an investigation from Congressman Foster, members of Congress have no duty to assist a

21

constituent on the constituent's demand. See, *e.g.*, *Richards v. Harper*, 864 F.2d 85, 88 (9th Cir. 1988) (affirming dismissal of pro se plaintiff's claim against U.S. Representative because Representative's failure to help the plaintiff was "neither inappropriate nor actionable"); *De Masi v. Schumer*, 608 F. Supp. 2d 516, 525 n.12 (S.D.N.Y. 2009) ("[C]ourts have recognized that elected members of the House and Senate cannot be sued simply because a constituent believes that member has failed to take a certain action or respond to the constituent's request for assistance.") (collecting cases); *Lannak v. Biden*, No. 06-cv-00180, 2007 WL 625849, at *2 (D. Del. Feb. 27, 2007) ("[P]laintiff's claim is barred under the legal principle that a member of Congress'[s] refusal to assist a constituent in response to the constituent's request for help does not create a cognizable claim."); *McDonough v. Ney*, 599 F. Supp. 679, 683 (D. Me. 1984) (Congress members' failure to intervene in plaintiffs' spat with state officials over education policy was "neither inappropriate nor actionable"). Without any duty owed to Plaintiff, Congressman Foster's conduct, as alleged in the complaint and taken in the light most favorable to Plaintiff, does not allow the court to draw the inference that the Congressman is liable for any misconduct. *Iqbal*, 556 U.S. at 678. As a result, Count 7 [sic] must be dismissed.

## J. Misrepresentation Claims

Count 5, Count 9, and Count 10 assert claims for misrepresentation. In Illinois, to state a claim for fraudulent misrepresentation, a plaintiff must plead: (1) a false statement of material fact; (2) known or believed to be false by the person making it; (3) an intent to induce the plaintiff to act; (4) action by the plaintiff in justifiable reliance on the truth of the statement; and (5) damage to the plaintiff resulting from such reliance. *Doe v. Dilling*, 888 N.E.2d 24, 35–36 (Ill. 2008). Claims for intentional misrepresentation must satisfy the requirements of Federal Rule of Civil Procedure 9(b). *Equity Builders & Contractors, Inc. v. Russell*, 406 F. Supp. 2d 882, 888 (N.D. Ill.

22

2005). Rule 9(b) requires a party to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). As a practical matter, this means that the plaintiff must identify the "who, what, when, where, and how" of the alleged fraud. *Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 646 (7th Cir. 2019).

None of the intentional misrepresentation counts are alleged with particularity. In fact, none even allege all of the elements required to state a claim, much less with the minimum of detail required by Rule 9(b). Count 5 arguably identifies a false statement: Dean Harrison told Plaintiff that the quizzes did not contain errors, when they did in fact contain errors. However, even if this claim had not already been dismissed for lack of personal jurisdiction, the Court would still find that it fails to state a claim. It is not clear from the complaint how the statement about quiz errors is a material fact, and the complaint alleges nothing about Dean Harrison's knowledge of the statement's falsity, inducement, reliance, or reliance causing damages.

Similarly, Count 9 arguably identifies a false statement—that Plaintiff would be allowed to continue his online classes while out of the country—and the Court can understand how that misstatement could be material. However, the complaint again fails to allege any facts at all regarding knowledge of the statement's falsity, inducement, reliance, or reliance causing damages.

Count 10 alleges that a VA employee omitted to tell Plaintiff that he would not receive full time benefits for being a student at Ashford. (It also alleges that a school admissions counselor did tell him that he would receive full time benefits, but she is not a defendant and Plaintiff does not allege that she works for the VA or Ashford, so it does not appear that he is pursuing a claim based on this statement.) A misrepresentation claim may be based on an omission of a material fact. See, *e.g.*, *Weidner v. Karlin*, 932 N.E.2d 602, 605 (2010). Again, the Court can see how this omission may be material, but the complaint does not include any facts supporting the remaining

23

elements of a misrepresentation claim.  For these reasons, Count 2, Count 9, and Count 10 must be dismissed.

### K.    18 U.S.C. § 1001

Plaintiff's response says that he is asserting fraud claims under the criminal code, 18 U.S.C. § 1001. [27. at 3, 12-13.] This section makes it a crime for any person to knowingly make a false statement to a government official or to conceal or cover up a material fact with a trick or scheme. However, "[n]othing in that criminal statute provides for a private right of action or provides civil remedies for a private person affected by any such statement.  Only the government may prosecute a defendant for this crime." *Daniels v. American Postal Worker Union*, 167 F. Supp. 2d 999, 1003 (N.D. Ill. 2001) (dismissing pro se plaintiff's claims asserted under 18 U.S.C. § 1001 and terminating case); *Luecke v. Gen. Elec. Co.*, 2006 WL 1589619, at *4 (E.D. Wis. June 6, 2006) ("18 U.S.C. § 1001 is a criminal statute that does not provide a private cause of action.").  To the extent that Plaintiff asserts any claims under 18 U.S.C. § 1001, they are dismissed with prejudice. *Johnson v. Piontek*, 799 F. App'x 418, 420 (7th Cir. 2020) (affirming dismissal with prejudice where amendment "would have been pointless") (citing *O'Boyle v. Real Time Resolutions, Inc.*, 910 F.3d 338, 347 (7th Cir. 2018)).

### L.    Motion to Amend the Complaint

Plaintiff also filed a motion to amend his complaint [28] and a proposed amended complaint [29].  Ashford University opposes the motion [32].  The Court denies Plaintiff's motion, based on deficiencies in the proposed amended complaint, but without prejudice.  Plaintiff may file a new motion to amend, with a new proposed amended complaint, *if* the proposed amended complaint corrects the deficiencies identified in this order.

A district court may deny a motion for leave to amend when the plaintiff fails to establish that the proposed amendment would cure the deficiencies identified in the earlier complaint. *Gonzalez-Koeneke v. West*, 791 F.3d 801, 807 (7th Cir. 2015) (citing *Arlin–Golf, LLC v. Vill. of Arlington Heights,* 631 F.3d 818, 823 (7th Cir. 2011) ("After reviewing the record below and the allegations on appeal, we have no reason to believe that an amendment would not be futile in this case."); *Foster v. DeLuca,* 545 F.3d 582, 584 (7th Cir. 2008) ("[A] district court may deny a motion to amend 'if the proposed amendment fails to cure the deficiencies in the original pleading, or could not survive a second motion to dismiss * * *.'" (quoting *Crestview Vill. Apartments v. United States Dep't of Hous. & Urban Dev.,* 383 F.3d 552, 558 (7th Cir. 2004))).

Plaintiff's proposed amended complaint [29] does not resolve the problems identified in Defendants' motions to dismiss, and in many instances it does not even address them. Though the proposed amended complaint is forty pages longer than the original complaint, the additional material yields Plaintiff little. *Perkins v. Silverstein*, 939 F.2d 463, 472 (7th Cir. 1991) ("While the amended complaint is significantly longer than the first, it adds nothing of any substance.") (affirming denial of motion to amend and dismissal of complaint). The proposed amended complaint adds claims, contains citations and quotations from various websites, offers legal arguments, includes sections repetitive of (if not copied and pasted from) the response brief, and insists that Plaintiff's suit is for fraud under 18 U.S.C. § 1001, a criminal statute that provides no private right of action. In short, it "is more unintelligible than [his] first complaint" and does not "respond to any of the deficiencies raised by Defendants' motions." *Endencia v. Am. Psychiatric Ass'n*, 2019 WL 4934601, at *4 (N.D. Ill. Oct. 7, 2019), *aff'd*, No. 19-3170, 2020 WL 6386595 (7th Cir. June 29, 2020) (denying motion to amend). For these reasons, the Court denies Plaintiff's motion to amend [28].

25

The Court will, however, allow Plaintiff to file another motion for leave to amend and proposed amended complaint. If Plaintiff's new proposed amended complaint does not resolve the problems identified in Defendants' motions to dismiss and this order, or if it would not survive a motion to dismiss, the Court may dismiss the claims with prejudice, meaning Plaintiff would not be able to file them again. *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 335 (7th Cir. 2018*)* ("[C]ourts are within their discretion to dismiss with prejudice where a party does not make [a] showing [that the party might cure the defects in the complaint]."); *see Li v. Illinois Dep't of Fin. & Pro. Regul.*, 2018 WL 1453551, at *7 (N.D. Ill. Mar. 23, 2018) (denying leave to amend because amendment would be futile).

Plaintiff must also comply with the applicable Federal Rules of Civil Procedure.[7] Though the Court construes pro se filings liberally, the Rules still apply to their filings. *Schindler v.*

_____

*Renaissance Hotel Mgmt. Co., LLC*, 639 F. App'x 377, 378 (7th Cir. 2016) (even pro se litigants "must follow court rules and directives.") (citations omitted). The Court draws Plaintiff's attention to some of the most important rules that any proposed amended complaint will have to comply with:

> *Fed. R. Civ. P. 8(a)*: A pleading that states a claim for relief must contain:
> (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and
> (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

_____

[7] These Rules are available on the Northern District of Illinois website at https://www.ilnd.uscourts.gov/Pages.aspx?hgzcPGDge5ToV668jfZ/XfdMKgtbS5Wl under the "Federal Rule" tab.

*Fed. R. Civ. P. 10(b)*: A party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. A later pleading may refer by number to a paragraph in an earlier pleading. If doing so would promote clarity, each claim founded on a separate transaction or occurrence--and each defense other than a denial--must be stated in a separate count or defense.

*Fed. R. Civ. P. 11(b)*: By presenting to the court a pleading, written motion, or other paper--whether by signing, filing, submitting, or later advocating it--an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

(1)    it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

(2)    the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

(3)    the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery * * *.

As a final note, Plaintiff may consider seeking the aid of the Judge William J. Hibbler Memorial Pro Se Assistance Program. The Pro Se Assistance Program operates by appointment only. Appointments may be made at the Clerk's Intake Desk on the 20th floor of the Dirksen Building at 219 South Dearborn Street, Chicago, IL 60604, by calling (312) 435-5691, or by signing up on the Court's website at www.ilnd.uscourts.gov/prose.htm.

**IV.    Conclusion**

For the reasons stated above, Defendants' motions [5, 18, and 22] are granted, and Plaintiff's complaint is dismissed without prejudice. Plaintiff's motion to amend [28] is denied, as the proposed amended complaint [29] fails to correct the deficiencies in the original complaint. Plaintiff may file a new motion to amend with a new proposed amended complaint—*if* he can do so consistent with the reasoning and instructions in this order——by April 26, 2021. If no motion for leave to amend is filed by that deadline, the Court will dismiss all claims with prejudice and

enter a final judgment.  If a motion for leave to amend is filed, then Defendants may file a response to the motion no later than May 10, 2021.


Dated: March 29, 2021

_____
Robert M. Dow, Jr.
United States District Judge

28